This morning, I just want to say briefly on behalf of the panel and behalf of the court, we welcome Chief Judge Stark from Delaware as a visiting judge, and we're delighted to have him here to join us this week. Thank you. It's a great pleasure to be here. First case this morning is 15-1177, In Re Aqua Products. Mr. Barney, good morning. May it please the court? James Barney on behalf of the Appellant Aqua Products. The board's obviousness analysis for substitute claims 22-24 is improper because it failed to consider the claims as a whole. Instead, the board focused on just a single limitation and ignored three other limitations that Aqua had added to those substitute claims, specifically to distinguish the prior art. Okay. Well, starting off, I know you made an original argument on the burden question. So now, do you agree that the burden is on the patentee to establish patentability under the motion to amend? And if so, how did your client meet that burden? Your Honor, of course, we don't agree that the burden should be on the patentee because we believe that 38 U.S.C. 316E clearly puts the burden on the petitioner. We made the point in our briefs that these are separate arguments, so we believe that we're entitled to a remand regardless of where the burden falls. I'm happy to address the burden argument first, if you would like. So even assuming that you had the burden, how did you satisfy your burden? I mean, your complaint, as you just stated, is that they failed to consider the claims as a whole, including the other limitations that you underlined. Right. But where is the argument you made with respect to the patentability of that? So if your question is, did we waive those three limitations, my answer is no, we did not waive those three limitations. So for instance, the touchstone for waiver is whether the lower tribunal was fairly on notice of the argument. And so one of the limitations, for instance, that we included in the substitute claims to distinguish the prior art was the controlled directional motion limitation. That limitation is in all three of the substitute claims, and it requires that the wheels or supports of the device control the directional movement. Is that the vector limitation? Well, that was another limitation, and that was the one that the court focused on. But I'm talking about the three other limitations that we added that the board did not focus on, and one of those was the controlled directional motion limitation. That's completely different than the vector limitation. The controlled directional motion limitation requires that the wheels or supports of the device control the directional motion of the cleaner, which is the opposite of random motion. That argument was made in our motion to amend. The limitation was underlined. We argued specifically in the motion to amend that the amendments to the claims were made to distinguish prior art. I see the argument that you made, but what I don't see is any evidence or technical data or the other type of indicia that's normally used to support an amendment. I don't see that in the record. Can you point to that? Yes, Your Honor. We submitted a declaration in support of our motion to amend. It was the declaration of Mr. Ehrlich. So, for instance, if you look at, and Mr. Ehrlich is an inventor, but he's also a person of ordinary skill in the art, so that certainly is evidence from a person of ordinary skill in the art. Now, page 2805 of the joint appendix, which is part of Mr. Ehrlich's declaration, he stated in support of the motion to amend that Henkin and Myers, and remember we're only talking about one combination here, the sole basis for the board's denial of our motion to amend was the Henkin and Myers combination. He stated Henkin and Myers were directed only to using random movement to clean, while we were looking for the opposite, a stable, systematic, controlled pattern of movement to avoid twisting of the cable, as well as shorter cleaning operations. So, that is evidence of distinguishing random motion devices such as Henkin and Myers from controlled directional devices, which is what our amended claims are directed to. Because remember, Henkin and Myers were specifically designed to be random motion devices. That's how they operate, and they had design elements included in them that contributed to the randomness, because pools come in all different shapes, and so when you put one of these random devices in the pool, the theory is by randomly moving around, they will eventually hit all portions of the pool. Those types of devices, Henkin and Myers, did not want patterns. They did not want controlled directional patterns, because if they did, they would get caught in a rut, and they wouldn't clean the entirety of the pool. The amended claims are the opposite of that. They require controlled directional movement, and the patent has six columns that speak directly to this concept of controlled directional movement, and 22 figures in the patent that show how you can configure the wheels. Does the patent refer to it as controlled random movement? That's one type of movement, but the patent talks about three different types of movement, curvilinear, scalloped, and controlled random. These claims are directed not to controlled random, but to controlled directional. Controlled directional is speaking to the patterns. If you look at the 22 figures in the patent that support this discussion in the patent, it shows curvilinear patterns, and it shows how you can adjust the wheels or supports to achieve certain types of curvilinear patterns. It also talks about a different type of pattern, the scalloped pattern, and it talks about how you can adjust the wheels or supports to achieve a scalloped pattern. That is completely different than the random patterns that Henkin and Myers were based upon. That was the argument we were making in the motion to amend. In the motion to amend, we pointed out we've made these amendments to distinguish random devices like Henkin and Myers, and then we submitted the declaration of Mr. Ehrlich, who pointed out, and there's other places as well, for instance, A2789, where Mr. Ehrlich, again, a person of ordinary skill in the arts, is talking about Myers, and he says the Myers patent apparatus is not intended for a controlled movement. It is premised upon the concept that random, uncontrolled pattern movement is essential to its operation. So these arguments were fairly presented to the board. The board simply didn't address them. In its obvious analysis, it focused… Yes, Your Honor. So isn't that a significant difference? It was in front of them, and they did consider it, and they said the stuff is all obvious. You are correct. They had a single-sentence finding that said for the rest of these limitations, including the three that I've addressed here and the four wheels limitation and the filtered water jet limitation, we find that those are merely common sense, but it cited nothing in the record to support that. It did not cite to an expert declaration. It did not cite to a declaration from a person of ordinary skill in the art. It did not cite to any of the prior art. It simply cited the KSR and then concluded that the combination of Henkin and Myers was not beyond the skill of a person of ordinary skill in the art. The problem with that is the combination of Henkin and Myers does not include those three limitations. The PTO does not deny that. On appeal here today, the PTO does not deny that those three limitations are not in the Henkin-Myers combination. In order for us to vacate, as you're asking, do we have to find that there is not substantial evidence in the record to support their finding that the other three limitations were obvious? Yes, Your Honor, precisely. That would be one basis for a remand. Of course, we also have the statutory argument. But I believe that under the state of the case as it is right now, with the PTO in their brief not disputing that these three limitations were not considered by the board and are not present in the combination that the board used, I think that calls for a remand. Well, doesn't the PTAB actually say that you failed to meet your burden in presenting those issues appropriately to the board and that you did so with respect to the vector limitation but not with the other three limitations you're talking about, and that's why they didn't address them? Well, but obviousness required in order for me to prove non-obviousness. Now, again, we don't think we bear that burden. But if we do, in order to prove non-obviousness, we can show it by showing that any one of the limitations is missing from the combination or that the secondary factors rebut a prima facie case or that there was no motivation to combine. And so you are correct that the board did say we failed to meet our burden on that one limitation, but that's just one limitation. We had three other limitations that we were arguing are not present in the combination and the PTO does not deny that. And so to go to your point... Can you point me to the motion to amend and where you made the argument with respect to those three other limitations? I know you referred to the vector limitation on the tab. Yes, Your Honor. So the motion to amend in the adjoint appendix begins at A2276. Right. Now, first of all, on page A2280, we underline the added limitation. I asked for where were the arguments. I understand, Your Honor. And then if you go to A2283, we explain that the amendment language relates to the directional positioning of the wheels. So that's the controlled directional limitation. And then we go on in the next paragraph and we explain. If you go to the bottom of that paragraph, it shows where the support comes from these amendments. And one of the supports comes from the controlled directional movement of the cleaner citing to the various places. And then if you go to A2285, we sort of summarize our argument. And we say the board's claim interpretation. And so this is the board's claim interpretation for the original claims. The board's claim interpretation may be fairly summarized as a determination that even totally... I'm not quite... Oh, I'm on page A2285. 85, okay. And I'm in basically the second paragraph. Patentability of proposed substitute claims. And I'm on the second paragraph under that. And I'm on the second sentence of that paragraph. We argue the board's claim interpretation may be fairly summarized as a determination that even totally random movement falls within the scope of the claim because if the direction of movement is forward, that force becomes the front portion and thus the direction of movement. Without conceding that that interpretation is correct, the substitute claims eliminate any controversy about the front portion and movement of the apparatus. And so we're making the point there that we amended the claims to distinguish random movement devices. We had basically lost the claim construction argument on the original claims because of this front portion argument. The board disagreed with us on that. And we said, fine, now we're going to amend the claims and we're specifically going to put in a directional control limitation that distinguishes random movement. We made that argument right there in the motion to amend. And then further, if you look on page A2286, in the second paragraph there we're talking about Henkin. And we point out at the bottom of that paragraph that the movement of the Henkin apparatus is random. If you go to page A2287, we're talking about the prior art in general and we're talking about on the second full paragraph, in 1999, although some cleaners may have included a water discharge conduit, they had negligible propulsive force and or created random movement. If you go to page A2289, we're specifically distinguishing Myers, which is one of the two references. And we say, it's of note that Myers configuration not only intends uncontrolled and erratic movement, it may not even move in the direction opposite of the jet drive. And then the next sentence down, the 183 patent is directed to a controlled movement cleaning apparatus. So I think we fairly put the board on notice that we were making this argument. Isn't that although in the context of trying to support the one limitation that the board focused on, you don't ever anywhere, at least help me if I'm wrong, say even in a sentence, plus there are these other limitations that are in our amended claim, you can see them underlined, but we're not going to argue them right now, but they're there. You don't ever say that, do you? I think I respectfully disagree, Your Honor. I think we are saying that we are trying to distinguish random motion devices through the limitations that we've made. And that's the basic argument we were making. It goes on in the Ehrlich Declaration. I can cite them more places in the oral argument. It's all in our briefs. I wanted to mention one other limitation, the four wheels limitation. There the board specifically brought it up during oral argument. So clearly it was on notice of that argument. Four wheels limitations in Claim 23. Hankin only discloses three wheels, and it specifically explains that the three-wheel design is there to randomize the motion. The three-wheel design is a critical feature of Hankin. And during oral argument, the board asked petitioner's counsel, what about this four-wheels design, this four-wheels limitation? And petitioner's counsel conceded that neither Hankin nor Myers has the four wheels. So there's your evidence that the board was on notice of the argument, which is the threshold for determining whether there's waiver. The PTAB said that it's ACWA's burden to present technical facts and reasoning about each feature believed distinguished or in the prior art, and that you only did that with respect to the vector limitation. I would just respectfully disagree with the board. I think I've gone through where he made the argument. Can you point us where you presented technical data or technical facts? Other than your statement, your argument, and maybe the expert that's echoing. That's where it is, Your Honor. It was the declaration of Mr. Ehrlich. And I only cited you a couple, but our brief goes through all the places where he talked about the difference between random and controlled, and that's technical because it's a very technical and distinct difference between how these things operate. We achieved something that the random devices weren't able to achieve, and we made a huge improvement in the art because we went away from random. We went to a controlled directional patterns, curvilinear or scallops, which is entirely different than Henkin. That's a technical distinction and a technical feature. We presented the arguments in our motion. We presented technical evidence in our petition, excuse me, in the supporting declaration. We raised it at the oral argument. We had demonstrative exhibits that talked about the difference between random and controlled direction. The board just failed to address it, likewise with the four wheels limitation. Obviously, I'm almost out of time. We're into your rebuttal. We'll restore our two minutes for rebuttal. Thank you, Your Honor. Good morning. May it please the Court. First, I'd like to respond to a couple of points made by Mr. Barney. The USPTO has never admitted that the filtered water limitation, the controlled motion limitation, and the four wheels limitation is not in the prior art. That was something that he had mentioned a few times. I think, as Judge Stark pointed out, the controlled directional movement argument was made tied to the vector limitation. The board in Idle Free, which Mike Krasofsky, Proxycom, agreed with the board's interpretation in Idle Free, says specifically that you are supposed to come forward with technical features. You're supposed to come forward with construction of the new claim limitations in order to persuade the board that the claims are patentable. Despite this specific guidance from the board, aquaproducts did not provide the new claim construction. They talk about how they're trying to distinguish the controlled movement, but they didn't even give a construction of what that controlled movement means or how that would differentiate. Wait a minute. I mean, Mr. Barney pointed us to, I mean, they've got 15 pages for their motion to amend, and he did point us to various statements that talked about the prior art, talked about how there's just random movement and no control, and here you've got control. I mean, that's something, right? I don't think that it's sufficient to say that they, you know, it is tied to the vector, and also the statements that were made don't specifically call out here is the limitation that we are putting forth. Here is the reason why it's not shown in the prior art. Here is what controlled movement means, because they're distinguishing controlled and random, but the board is saying that the Henkin has a vector when you can adjust the vector, and you can adjust the jet stream to control the motion, and the board specifically pointed to parts of Henkin which say that the board, you know, that Henkin specifically teaches a selected angle, specifically teaches allowing the car to climb vertical surfaces, and this was made in the original, you know, when they were talking about the original claims, and aquaproduct is not challenging the original claims here. So the board wasn't persuaded the first time, and now in the new… But is it your view, let me step back a minute, is it your view, I mean there's a little confusion at least in my mind, between a substantive discussion on the vector claim, the clause there, and then these separate little underlined pieces, which include control the directional movement. So as I understood Mr. Barney's, most of his argument, that went to really the control limitation. Is it your position that all of this discussion and the board's opinion with regard to the vector limitation subsumed the questions with respect to control? I think they are intertwined because you are having, I mean they're saying they're using their jet stream, and that's another thing, you know, the declaration talks a lot about the jet stream, but the jet stream is not in the claims, that's not the language that they use. So even a lot of the language in the declaration is not addressed to the exact claim limitations that they use. Can I ask you a very fundamental basic question, which is does the 15 page limit on the motion to amend, are declarations extra? Do they, I mean the board accepts the declaration attached to the motion to amend, and that's outside of the page limit, is that the way the system works? It's just a basic question. So, I mean there is a rule that says that you, the arguments have to be made in the motion, that is rule 42, 23. But then the declarations are accepted as part of the submission, right? Or no? Well, the arguments are supposed to be made in the motion, and you can't incorporate, you can't just say, oh as we say in our declaration, you have to like lay out what your argument is. So the declaration is accepted, but you can't just put everything in the declaration and not explain the argument in the motion, because, you know, you do have to make, the rule says you have to make the arguments in the motion, and then rule 42.6A3B prohibits incorporating, just simple incorporating, you know, arguments from one document into another. So there is a requirement that in the motion itself, you have to explain your argument. And sometime after this case, the PTAC decided that 15 pages just wasn't enough, isn't that right? That's correct. They didn't ask for more pages in this case, and I do think that, you know, they didn't use their pages wisely. They repeated a lot of basic arguments about the licensing and the background instead of coming forth with... What if it was a procedure? When it was 15 pages, they could move for additional pages? There's two things you can do. You can move for additional pages, or you can move to put your claims in an appendix and have it not count, and those are two things that the board has granted in certain cases. So I don't think that the 15 pages is actually an issue here because they didn't ask for more pages in whichever way that they could have. Now, the board did treat... I think Judge Stark pointed out that there is a sentence in the board's opinion, so it looks like they did treat the additional limitations. There's this consequently sentence saying that anything else would be common sense and there's a finite difference, whatever that sentence is. So it does appear that the board may have accepted these other limitations as something that was before it and were in play and had to deal with them, right? I don't agree with that reading of what the board said. If we actually look at the board's statement in that case... The board... So when the board says... If we look at... So it's on A51 of the record. Right. You know, the board talks about the resultant vector having the same purpose. You know, the board... So this whole page is directed to the resultant vector, you know, the Henkin showing the downward thrust, Henkin showing the propelling forward, Henkin showing climbing vertical surfaces, working itself out of corners. And so then the next paragraph... Okay, they say that the patent owner said that, you know, they don't recognize that they're solving the problem. And then, you know, as discussed with respect to the original claims, we disagree. Henkin uses a downward resultant force for substantially the same purpose, and then consequently we respect... So I believe the additional limitations is actually talking about just the resultant force vector because that is the only limitation that was being argued. So in your view, the other three limitations that are pointed to on appeal here were not considered by the PTAS? Yes, because they weren't argued. Nowhere is four wheels in their motion. Nowhere is filtered water in their motion. And the controlled discussion is only with respect to, you know, intertwined with the resultant vector. How do you understand how that could be the right process? All of the amendments were underlined. Right. So the board had notice of them. And the motion to substitute claims comes during a trial phase at which all of these concepts were in play. These substitute claims are certainly responsive to the grounds of unpatentability that were at issue in the trial phase. How can it be that the board, at the end of all that, can just simply ignore the other three proposed limitations? Is there a burden to, say, patentability? And, well, one of the claims, the filtered water claim, was already in the original claims. And they're not fighting the original claims. So clearly that's not going to be a patentable limitation. And the four wheels, that seems pretty obvious. And they never mention that in their motion. It's their burden to show why that makes it patentable, and they chose not to. I'm scanning the motion, and it seems to me that there's quite a bit of mention of the wheels. Well, front wheels, but not four wheels. Well, it does mention the rear wheels. If you've got rear wheels, you must have front wheels. They do mention both front wheels and rear wheels, but they never talk about the four wheels and four wheels distinguishing over three wheels, and why four wheels is better than four wheels. Four wheels is better than three wheels. Right, yes, exactly. In Proxicon, this court, as you know, allowed, among other things, the reference that was not used as the basis for the institution, the IPR, to still be at issue in the trial phase, correct? Sure. And in doing that, the court said that, among other things, that particular piece of prior art was very much a part of the entire proceeding, and therefore the patentee in that instance was not taken by surprise. It was not taken by surprise by the board's reliance on that piece of prior art. Don't those concepts, if applied here, benefit the patentee such that these other limitations were at issue throughout the trial phase and there could have been no surprise to the board that the patentee was relying on them in their motion to amend? I don't think the issue is that the board was surprised. I think the issue is that it's their burden to show patentability, and the board made a general statement that they didn't meet the burden. I don't think the board has to address every limitation. I mean, I think the board just has to respond to the argument made by the patent owner. The board did fully respond to the argument made by the patent owner, and the board found you didn't meet your burden. In follow-up to Judge Stark's question, you criticized the penholder for not making a claim construction argument or proposing claim construction, and then you go on and say that they admitted or accepted the claim construction that had already been put forth. Correct. So if they did that, then why is there... If they're saying the current claim construction is fine with us, why is it that you want them to submit additional claim construction? Well, for the claims that they added. The board didn't construe the claims that they added, because those weren't part of the original claims. And in this case, you know, the board responded to all of the arguments that Aquaproducts made regarding possibility of the substitute claims and ultimately found that they didn't meet their burden. It's an abusive discretion standard here, and that's all that was required of the board when they denied the motion. Therefore, if there's no further questions, I'll concede the rest of my time. Thank you. A few points if I may. First of all, I want to clear up something. The vector limitation has absolutely nothing to do with the controlled directional limitation. The controlled directional limitation says that the wheels or supports must control the directional motion, and that's the board's claim construction. If you go to A49, the board never faulted us for not putting forth a claim construction. The board construed that limitation. A49, the board recognizes and correctly discerns. If you look at the paragraph at the top of A49, the board is talking about substitute claim 22, and at the bottom there of that paragraph it says, thus, substitute claim 22 recites that the supports, the supports, which is the wheels or supports, the supports control the directional movement, although the apparatus may be propelled by the water jet. So the water jet is propelling. The supports are controlling, and then substitute claim 24 recites that such control was supplied by the wheels rather than supports. So supports is a broader term, wheels is a narrower term. It has nothing whatsoever to do with the jet, and it has nothing to do with the vector. It has to do with the wheels, and so I disagree strongly that they're intertwined in any way. They were separate arguments. The second point I would like to make is that the board, you got it exactly right, Judge Stark, the board did not find waiver here. The board purported to make a finding that these limitations were present in the combination of Hankin and Myers, which the PTO did not dispute in their brief. They had an opportunity to point to where in Hankin and Myers those limitations are satisfied. They chose not to, which I take to mean they don't dispute it. Isn't waiver kind of an odd term to be used in this context? I mean, if the board assumes essentially you haven't made a sufficient argument for burden review, and you haven't made the argument, that's not really waiver, right? Well, that's the argument they made. The PTO made the argument in their red brief at the end that we waived these arguments, and so I'm responding to what they said. We didn't waive the arguments. We made the arguments to preserve them. Waiver's a low bar, and the four wheels limitation shows that the board was on notice of the four wheels limitation because they raised it, and they asked petitioners... So there's at least, you would concede, I think, uncertainty here as to whether you actually argued the other limitation. To the extent there is uncertainty, how does the 12-month statutory deadline that the board is under factor in? Shouldn't you have to be just explicitly clear about what you're arguing so that they can meet their obligation? I would say no, Your Honor. I mean, we have to be clear, of course. You always have to be clear as a litigant, but we had 15 pages. We had a 15-page limit to not only make the amendments to the claims, show where there was support in the written description for those amendments, show that new matter was not added, and then try to distinguish those claims against all known prior art in 15 pages. So I would think if we're going to start talking about the equities, clearly the equities are weighing against the PTO and in our favor because we didn't have the... and it was a very confusing sort of time in terms of who bears the burden. I know we didn't address the burden very often during this argument, but let me just say I am aware that other cases have been argued with respect to 316E, and we would respectfully ask that if those cases go against the PTO, that we get a remand on that basis as well. Thank you. We thank both counsel and the cases.